IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GARY M. TAYLOR, | ) |
|     Petitioner, | ) NO. 3:18-cv-01040 |
| v. | ) JUDGE RICHARDSON |
| TBC CORPORATION and NTW, LLC, d/b/a NTB – NATIONAL TIRE AND BATTERY, | ) |
|     Respondents. | ) |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the "Motion to Vacate Arbitration Award" (Doc. No. 30, "Motion"), filed by Respondents TBC Corporation and NTW, LLC d/b/a NTB – National Tire and Battery (collectively, "NTB" or Respondents). Respondents filed a memorandum in support of the Motion (Doc. No. 31). Petitioner filed a Response in opposition to the Motion (Doc. No. 33). Respondents did not file a reply.

For the reasons discussed herein, the Court will deny the Motion.

### BACKGROUND

In 2018, Petitioner[1] Gary M. Taylor filed suit in this Court against his employer(s), NTB, asserting claims under the ADA, Title VII of the Civil Rights Act of 1964, and Tennessee law. (Doc. No. 1 at 7-10). Because Petitioner and Respondents entered into an arbitration agreement,

---

[1] Petitioner, as the party filing this suit, has had the status of "Plaintiff" in this litigation, but the Court herein refers to him as "Petitioner" due to the above-discussed procedural context for the instant Motion. For similar reasons, "Defendants" are referred to herein as "Respondents"—albeit with the caveat that, as discussed below, the filings in this case have fostered considerable confusion about the identity of Respondent(s) and whether there actually is more than one Respondent (or at least more than one Respondent that would be liable on any judgment).

Respondents moved to compel arbitration, (Doc. No. 20), and the case was stayed pending arbitration. (Doc. No. 26). As set forth below, Respondents apparently now regret having compelled arbitration in the first place.

The arbitrator ultimately found for Petitioner on his failure-to-accommodate claim under the ADA. (Doc. No. 33-2 at 12). On April 21, 2022, the arbitrator issued a Final Award. The arbitrator awarded Petitioner $178,000 in compensatory damages (which included compensation for emotional distress under the ADA (Doc. No. 33-2 at 14)) and $116,086.12 in attorneys' fees and costs. (Doc. No. 31-3 at 1).

On May 12, 2022, Petitioner filed in this case a petition for confirmation of the arbitration award, reopening the case. (Doc. No. 27). Opposing such petition, Respondents filed a motion to vacate the arbitration award, arguing that the arbitrator manifestly disregarded controlling Sixth Circuit law. (Doc. No. 30 at 1).

LEGAL STANDARD

9 U.S.C. § 10(a) provides four circumstances under which a district court may vacate an award:

> (1) Where the award was procured by corruption, fraud, or undue means;
> (2) Where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause show, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

In the Sixth Circuit, vacatur also is potentially available also under the "manifest disregard" doctrine. This doctrine is applicable where "(1) the applicable legal principle is clearly defined and

not subject to reasonable debate; and (2) the arbitrators refused to heed that legal principle."
*Marshall v. SSC Nashville Operating Co., LLC*, 686 F. App'x 348, 353 (6th Cir. 2017).

## DISCUSSION

A. <u>ADA failure to accommodate</u>

Respondents argue that the arbitrator's decision in favor of Petitioner on his ADA failure-to-accommodate claim must be vacated because the arbitrator manifestly disregarded the law. They zero in on the arbitrator's statement, made based on citations to Third and Seventh Circuit case law, that "[t]he employer has to meet the employee half-way, and if it appears that the employee may need an accommodation but doesn't know how to ask for it, the employer should do what it can to help"; in so stating, Respondents assert, the arbitrator ignored allegedly binding Sixth Circuit law, which does not hold that an employer must meet the employee halfway under the ADA. (Doc. No. 30 at 1); (Doc. No. 31 at 11) (citing 33-2 at 10).

But the arbitrator, unlike this Court (which would have decided the case but for Respondents' motion to compel arbitration), was not bound to apply Sixth Circuit law in its decision. The parties' arbitration agreement contains a section titled "Arbitration Procedures." (Doc. No. 33-1 at 2). That section reads:

> The parties agree to use the American Arbitration Association ("AAA") to govern the arbitration proceeding. The Arbitration must be conducted before a single arbitrator in the State where the Associate was employed by the Company at the time the Claims arose. Any Arbitration will be in accordance with the then current employment arbitration rules and procedures of AAA, except to the extent any such rules and/ or procedures are in conflict with any express term of this Agreement, in which case such term of this Agreement will control.

*Id.* Thus, any restriction on the arbitrator's choice of law would be found in the employment arbitration rules and procedures of AAA. But nothing in the employment arbitration rules or

procedures of AAA limit the arbitrator's choice of law.[2] Thus, neither the arbitration agreement nor AAA's rules establish that the arbitrator must use Sixth Circuit law.

Arbitrators are not by default bound by the law of the circuit in which they sit. Those who seek to challenge an arbitrator's decision are free to go to any federal court that possesses jurisdiction over the case, which may be in a circuit different from the one in which the arbitrator is located. Thus, there is no inherent connection between the location of an arbitration and any particular circuit.

Following the law of one circuit over another does not warrant application of the "manifest disregard" doctrine. Consistent with the above, the arbitrator was free to view all circuit law as equally precedential or authoritative and to choose whatever law he saw fit to choose.[3] Attempting to follow the law of any particular circuit(s)—in this case the Third and Seventh Circuits—is not manifest disregard of the law.

And this is true even where, as Respondents argue is the case here, the arbitrator misapplied applicable law. (Doc. No. 31 at 11-12) (arguing that even if Seventh Circuit law controlled, the arbitrator did not properly apply it because, according to Respondents, Respondents provided a "training session by Philip Tortorich, an individual familiar with dyslexia"). "A mere error in the

---

[2] https://www.adr.org/sites/default/files/EmploymentRules-Web.pdf.

[3] Furthermore, when an issue is the subject of a circuit split, the arbitrator well may not have to embrace the view of any particular circuit on the issue, so long as he or she follows any relevant statute(s) implicated.
 The general notion that an arbitrator is free to call the shots on choice-of-law issues has been stated by courts over and over in a variety of different contexts. *E.g.*, *ARMA, S.R.O. v. BAE Sys. Overseas, Inc.*, 961 F. Supp. 2d 245, 267 (D.D.C. 2013) ("a court must defer to the arbitrator's judgment" on choice of law, even if the arbitrator gives no explanation for its decision"). The current iteration of this notion, in reaction to Respondents' current argument, is simple: to the extent that the arbitrator wished to rely on federal appellate case law, the arbitrator was free to choose its case law from among the various federal courts of appeals and was not bound to eschew Third or Seventh Circuit case law in favor of Sixth Circuit case law.

interpretation or application of the law is insufficient. Rather, the decision must fly in the face of clearly established legal precedent." *Marshall*, 686 F. App'x at 353. So long as the arbitrator in good faith invoked legal authority[4] applicable to the issues at hand—a circumstance that is easily inferable here and one that Respondents do not dispute—an arbitrator cannot be said to have manifestly disregarded the law. In this case, the arbitrator set forth a reasonable, plausible explanation for his decision: Respondents failed to engage in the interactive process because Respondents did not provide to Petitioner any trainers who had "experience training dyslexic employees."[5] (Doc. No. 33-2 at 11-12). Therefore, the arbitrator did not manifestly disregard the law in concluding, based on Third and Seventh Circuit precedent he (not improperly) chose to invoke, that Petitioner succeeds on his ADA failure-to-accommodate claim.

    B. <u>Compensatory damages</u>

The arbitrator explained his reasoning for his damages calculation as follows:

> I have reviewed the jury verdicts in employment discrimination trials in the United States District Court for the Middle District of Tennessee over the last several years. In employment cases where a jury both finds for the plaintiff and makes an award of emotional distress damages, the average compensatory damage award is roughly $89,000. Based upon my view of the evidence, my observations, and my credibility determinations regarding the emotional distress suffered by Claimant as a result of Respondent's violation of the ADA, I find that twice this amount, $178,000.00, is the appropriate compensatory damage award in this action.

(Doc. No. 33-2 at 14).

Respondents object to the ultimate award of $178,000 in compensatory damages, stating that "[t]he Arbitrator provided no citations to cases reviewed, relevant facts, actual verdicts,

---

[4] As indicated above, at least in the instant case, the arbitrator had his choice of various jurisdictions from which legal authority could be drawn for application to the issues at hand.

[5] The training session led by Philip Tortorich does not make the arbitrator's factual finding incorrect. Philip Tortorich has a son who is dyslexic, but he still does not have experience in training dyslexic employees. (Doc. No. 31-4 at 305).

whether those emotional distress damages included medical damages, or whether those damages were solely related to emotional distress or other damages." (Doc. No. 31 at 13). According to Respondents, "the award is representative of improper impartiality [*sic*] of the Arbitrator in favor of [Petitioner] or the result of the Arbitrator 'dispens[ing his] own brand of industrial justice' and must be vacated." (Doc. No. 31 at 14) (quoting *Altruist, LLC v. Medex Patient Transport, LLC*, 308 F. Supp. 3d 943, 947 (M.D. Tenn. 2018)).

The Court construes this as two separate avenues of challenge. The first is a challenge to the decision under 9 U.S.C. § 10(a)(2), "[w]here there was evident partiality or corruption in the arbitrators[.]" The second is a challenge under the "manifest disregard" doctrine, which the Court believes Respondents must be invoking, inasmuch as *Altruist*, which respondents quote here, used the phrase "dispense [their] own brand of industrial justice" as a description of manifest disregard of the law. *Altruist*, 308 F. Supp. 3d at 947-948. The Court addresses these avenues in turn.

### 1. *Evident partiality*

The Sixth Circuit "ha[s] held that the challenging party must show that a reasonable person would have to conclude that an arbitrator was partial to the other party to the arbitration. In order to sustain that burden, the party asserting evident partiality must establish specific facts that indicate improper motives on the part of the arbitrator." *Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 306-307 (6th Cir. 2008) (citations and quotations omitted).

Here, the only alleged facts that Respondents assert to attempt to show partiality are that "[t]he Arbitrator's award is ambiguous, bizarre in its calculation, and unsupported by evidence presented by Taylor." (Doc. No. 31 at 14). But Respondents give no explanation as to how the arbitrator's decision is unsupported by Petitioner's evidence. And even if the arbitrator's award is "bizarre in its calculation" and "ambiguous" as to whether it is "solely related to emotional distress

or other damages," that does not show the arbitrator was *partial to Petitioner*. Examples of specific facts showing partiality include an ongoing relationship between the arbitrator and the arbitration-winner or the arbitrator's antagonistic behavior towards the party seeking vacatur. *Uhl*, 512 F.3d at 307. A bizarrely calculated or "ambiguous" finding in favor of Petitioner does not specifically show any partiality on the arbitrator's part, because there are many other plausible reasons a finding might be "bizarre in its calculation" or "ambiguous." Thus, Respondents have not met their burden to cite specific facts that show the arbitrator exhibited evident partiality.

    2.    *Manifest disregard*

In explaining the "manifest disregard" doctrine, the Sixth Circuit announced in *Jaros* that arbitrators are under no obligation to state the rationale underlying their decisions:

> Where, as here, the arbitrators decline to explain their resolution of certain questions of law, a party seeking to have the award set aside faces a tremendous obstacle. If a court can find any line of argument that is legally plausible and supports the award then it must be confirmed. Only where no judge or group of judges could conceivably come to the same determination as the arbitrator must the award be set aside.

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995). *Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir. 2000) ("Arbitrators are not required to explain their decisions. If they choose not to do so, it is all but impossible to determine whether they acted with manifest disregard for the law."). When an arbitrator gives no explanation for a decision, so long as a court can conceive of any legally plausible explanation, even without any indication that the arbitrator actually thought of such explanation, the arbitrator's decision is upheld. *Solvay Pharms., Inc. v. Duramed Pharms., Inc.,* 442 F.3d 471, 483-485 (6th Cir. 2006) (declining to vacate an arbitration panel's unexplained decision because plaintiff identified two plausible theories for the decision).

The arbitrator's prerogative to give no explanation encompasses the prerogative to give an incomplete explanation. The principle announced in *Jaros*, therefore, extends to situations where, as here, the arbitrator gives a cursory or incomplete explanation of damages calculation. That is, if the Court can fill in the blanks of a sparse explanation with any argument that is legally plausible and consistent with what the arbitrator stated, the arbitrator's decision is not vacated. *Solvay*, 442 F.3d at 475, 484 (upholding a $68 million award for plaintiff after finding an explanation for why an arbitration panel "apparently determin[ed] that the exclusive remedy/no damages provision did not apply to [defendant]'s breach of the [contract],"). One plausible line of argument here, for example, is that the arbitrator made the necessarily subjective (but not inappropriate or unauthorized) assessment that the emotional distress suffered by Petitioner is double that of the average meritorious plaintiff in the Middle District of Tennessee, where Petitioner's suit was originally filed—thus meriting an award of such damages in an amount double the average amount (according to the arbitrator's research) of such an award in the district. Because there is a legally plausible line of reasoning, the arbitrator's award cannot be vacated based on the "manifest disregard" doctrine.

CONCLUSION

Having made their arbitration bed, Respondents now seek to avoid having to sleep in it. This they cannot do, however.

For the reasons discussed herein, Respondents have not shown manifest disregard of the law, evident partiality, or any other basis to vacate the arbitrator's determination as to liability or damages. Accordingly, Respondents' motion to vacate (Doc. No. 30) is **DENIED**. Petitioner's petition (Doc. No. 27) accordingly is **GRANTED**, and the arbitrator's award is **CONFIRMED**.

The Court will separately enter judgment in favor of Petitioner generally consistent with the proposed judgment filed by Petitioner (Doc. No. 27-5). Before then, however, the Court needs to resolve the correctness (or lack thereof) of the name(s) of the liable party or parties on the proposed judgment—a topic about which various (inconsistent) documents in this case have fostered considerable confusion. The parties shall (jointly or separately, as appropriate) state their views as to whom should be identified on the caption of the judgment as the liable party or parties.[6]

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[6] By stating their view on such matters, Respondents shall not be deemed to have waived any objection to the denial of the instant Motion, the granting of Petitioner's petition to confirm the arbitrator's award, or the entry of a judgment (in any amount) in favor of Petitioner.